**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| | : | |
| STATE OF NEW JERSEY *ex rel.* | : | |
| LINDA M. MCDONALD | : | |
| | : | |
| Plaintiff, | : | |
| | : | 3:13-cv-05559 (FLW)(LHG) |
| v. | : | |
| | : | **OPINION** |
| WILLIAM H. COPPERTHWAITE III, | : | |
| NANCY COPPERTHWAITE, WILLIAM | : | |
| H. COPPERTHWAITE, Jr., *deceased*, *by* | : | |
| *and through NANCY COPPERTHWAITE,* | : | |
| *Executrix of the Estate of William H.* | : | |
| *Copperthwaite, Jr.*, RLI SURETY, and RLI | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
_____:

**WOLFSON, United States District Judge**:

Before the Court are the Motions of Nancy Copperthwaite Tischenkel ("Nancy"), the Estate of William H. Copperthwaite, Jr. ("Estate of WHC Jr."), by and through its Executrix, Nancy Copperthwaite Tischenkel, William H. Copperthwaite III ("WHC III"), RLI Surety, and RLI Insurance Company (collectively "Defendants") to Dismiss the Amended Complaint of Linda M. McDonald ("Plaintiff") for damages and declaratory relief arising from, *inter alia*, Defendants' alleged tortious interference with Plaintiff's expected inheritance from her mother Helen Copperthwaite ("Helen"). Defendant Nancy moves to dismiss the Amended Complaint for

lack of subject matter jurisdiction and/or improper joinder, pursuant to Fed. R. Civ. P. 12(b)(1) and 19(b), for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants, the Estate of WHC Jr., WHC III, RLI Surety, and RLI Insurance Company, join in Defendant Nancy's Motion in its entirety and offer additional support in separate briefing.

For the reasons set forth in the opinion below, this Court finds that 1) the Amended Complaint adequately alleges diversity jurisdiction, and 2) while the inconsistent nature of the Amended Complaint makes it difficult to ascertain precisely, it appears that, as pled, the probate exception to federal subject matter jurisdiction applies to Plaintiff's claims for relief, but 3) this Court may have jurisdiction over at least one claim against at least some defendants if properly repleaded. Accordingly, Defendants' Motion to Dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) is granted, the Amended Complaint is dismissed without prejudice, and Plaintiff is granted leave to amend consistent with this Opinion within the time set forth in the accompanying Order.

I. BACKGROUND

This case concerns a dispute between three siblings, Plaintiff on the one side, and Nancy, and the Estate of their deceased brother WHC Jr. on the other, over the inheritance expected from the sisters' deceased mother, Helen, who was a citizen of the State of New Jersey. One of the siblings, Plaintiff, who is a citizen of the State of New Jersey, brings suit in this Court to recover damages and obtain declaratory relief against her sister, Nancy, who is a citizen of the State of Florida; against the estate of her brother, WHC Jr., who was a citizen of the State of

Pennsylvania; and against her nephew, WHC III, who is a citizen of the State of Pennsylvania. Plaintiff seeks 1) compensatory damages for the money allegedly stolen from their mother, Helen, during WHC Jr.'s guardianship of Helen; 2) punitive damages for WHC Jr.'s, Nancy's, and WHC III's alleged tortious interference with her expected inheritance; 3) the imposition of a constructive trust over certain monies; and 4) declaratory relief barring Nancy from sharing in any recovery. Plaintiff has also named RLI Surety, a citizen of the State of Pennsylvania, and RLI Insurance Company, a citizen of the State of Illinois, as defendants in order to recover from them as sureties on the fiduciary bond executed by WHC Jr. to ensure his faithful performance of the guardianship of his mother, Helen.

The facts underlying the dispute in this case begin on July 11, 2005, when WHC Jr. was appointed Guardian of the Person and Property of his mother, Helen, who had been adjudicated incompetent by the New Jersey courts. Pursuant to N.J. Stat. § 3B:15-1, WHC Jr. qualified as his mother's guardian by taking an oath and becoming the principal on a fiduciary bond, initially in the sum of $125,000, and eventually increased to $350,000 by a rider effective July 15, 2011. Defendant RLI Surety, a division of Defendant RLI Insurance Company, acted as surety on WHC Jr.'s bond. Under New Jersey state law, the bond required of a guardian of a person who is incapacitated is conditioned as follows:

> a. To administer the ward's estate to the best of the guardian's ability, and to take proper care of the ward if the guardian is the guardian of the ward's person;
> b. To make a just and true account of the administration of the guardianship, and, if required by the court, to settle the accounts therein within the time so required.

N.J. Stat. § 3B:15-7. In short, by executing the bond, WHC Jr. bound himself to faithfully administer the guardianship.

On July 26, 2005, Helen executed a will naming her three adult children, Plaintiff, Nancy, and WHC Jr., as equal beneficiaries. The will provided that in the event that any of the

children predeceased Helen, the share of the deceased child would be divided between the surviving children. Plaintiff alleges that over the next roughly six and a half years from July 2005 to January 2012, WHC Jr., acting as his mother's guardian, defalcated or wasted a substantial sum of Helen's assets. Plaintiff alleges that WHC Jr. defalcated or wasted funds by (i) paying his son, WHC III, almost $80,000 for caretaking services for Helen, which were never actually provided; (ii) by converting over $60,000 of the proceeds from the sale of Helen's home; and (iii) by spending or shifting money from Helen's various bank accounts into accounts or trusts controlled by WHC Jr. In total, Plaintiff claims that WHC Jr. wasted or defalcated $405,995.98 of Helen's money during his tenure as her guardian. In addition to the defalcations, Plaintiff further alleges that WHC Jr. breached his fiduciary duties as guardian by rendering incomplete accountings, which were never judicially approved, and by never rendering a final accounting of his tenure as guardian.

WHC Jr. died on January 10, 2012, while his mother Helen was still living. In accordance with the terms of Helen's will, his share of Helen's future estate was to be divided between Plaintiff and Nancy, leaving them with equal fifty percent entitlements. WHC Jr.'s death terminated his guardianship of Helen. No successor guardian was appointed by the courts. Nancy was made the Executrix of WHC Jr.'s estate on January 30, 2012. Sometime between January and June of 2012, Plaintiff contacted Nancy, asking her as WHC Jr.'s Executrix and successor in interest to render a final accounting of WHC Jr.'s time as guardian of Helen. While it is unclear from the pleadings what if any response Nancy provided, Plaintiff alleges that Nancy refused to perform the final accounting. It is clear that no final accounting of WHC Jr.'s guardianship was ever made.

Plaintiff alleges that the money defalcated by WHC Jr. may now be in two trusts he established: 1) the W.H. Copperthwaite Retirement Plan Beneficiary Trust and 2) the Trust for the Benefit of William H. Copperthwaite III. Plaintiff's husband, Eugene McDonald, was named as the first successor trustee on the Trust for the Benefit of William H. Copperthwaite III. The trust instrument for that trust provided that at WHC Jr.'s death, Eugene McDonald, would be offered the trusteeship, which, if declined, would then be offered to Nancy. In March of 2012, Eugene McDonald and Nancy exchanged emails discussing the status of both trusts. McDonald requested the unredacted trust agreements and schedules of trust assets for the Retirement Trust and the WHC III Trust. Ultimately, Plaintiff alleges that Nancy provided only the trust agreement for the WHC III Trust, and that Plaintiff has been unable to obtain full schedules of trust assets for either trust.

Helen died on July 26, 2012. Her will was admitted for probate on August 9, 2012, in the Camden County Surrogate's Court. At that time, Nancy was made the Executrix of Helen's estate. Plaintiff alleges that Nancy, as Executrix of Helen's Estate, has intentionally failed to investigate into the whereabouts of, collect, or recover the monies allegedly defalcated by WHC Jr. and WHC III during the life of Helen.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by a six-count Complaint on September 18, 2013. In Count I, Plaintiff alleges that WHC Jr., WHC III, and Nancy have tortiously interfered with Plaintiff's expected inheritance from Helen in violation of the common law of New Jersey. In Count II, Plaintiff seeks the imposition of a constructive trust over the "value" of WHC Jr. and WHC III's

"unjust enrichment" in the amount of $405,995.98. Plaintiff also seeks a declaratory judgment barring Nancy from recovering any portion of the allegedly defalcated funds. In Count III, Plaintiff alleges breach of WHC Jr's fiduciary duty as guardian of Helen and seeks payment from RLI Surety and RLI Insurance of the $350,000 fiduciary surety bond executed by WHC Jr. In Count IV, Plaintiff alleges that WHC Jr. committed fraud in his handling of $326,438.66 of Helen's assets while guardian and WHC III committed fraud in accepting payment of $79,557.32 for caretaking services he did not provide. In Count V, Plaintiff alleges WHC Jr. and WHC III converted $405,995.98 of assets from Helen. In Count VI, Plaintiff alleges that WHC Jr., WHC III, and Nancy engaged in a civil conspiracy to tortiously interfere with Plaintiff's inheritance from Helen. Except as otherwise already stated, all counts share a common *ad damnum* clause as prayer for relief.

On October 28, 2013, the first three of the four motions to dismiss the Complaint in this case were filed. Defendant Nancy moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), and 19(b). Defendant Estate of WHC Jr. joined in Nancy's motion and also separately moved to dismiss on the same bases. Defendant WHC III also joined in Nancy's motion. The fourth and final Motion to Dismiss in this case was filed on October 30, 2013. On that date, Defendants RLI Surety and RLI Insurance Company joined in Nancy's motion and separately moved to dismiss the Amended Complaint for failure to comply with N.J. Stat. § 3B:15-24, which requires that plaintiffs prosecuting fiduciary surety bonds must sue in the name of the State of New Jersey.

Plaintiff, admitting that the action had erroneously not been brought in the name of the State of New Jersey, moved to amend the Complaint to correct the caption on November 30, 2013. In a Letter Order, issued on December 9, 2013, the parties consented to the filing of an

Amended Complaint brought in the name of the proper parties. The pending Motions to Dismiss were fully briefed on December 16, 2013. On December 27, however, Plaintiff by letter brief requested permission to file a Surreply to address Defendants' arguments raised only in Reply briefing. Plaintiff attached a proposed Surreply to her letter brief. With the exception of the one argument in the Motion of RLI Surety and RLI Insurance, which has already been resolved by the filing of the Amended Complaint, all four Motions to Dismiss and Plaintiff's request for Surreply are now before the Court.

## III. STANDARD OF REVIEW: RULE 12(b)(1)

Plaintiff, as the party invoking the federal courts' jurisdiction, bears the burden of demonstrating that jurisdiction is proper. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006); *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir. 1993). In diversity cases brought under 28 U.S.C. § 1332, "[a] party generally meets this burden by proving diversity of citizenship by a preponderance of the evidence." *McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 286 (3d Cir. 2006) (citing *McNutt v. Gen. Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189 (1936).

Fed. R. Civ. P. 12(b)(1) permits a party, by motion, to challenge the subject matter jurisdiction of the federal courts. "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. Facial attacks . . . contest the sufficiency of the pleadings." *Common Cause of Pa. v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir. 2009) (citations omitted). "When considering a facial attack under Rule 12(b)(1), the court must consider the allegations of the complaint as true." *Turicentro, S.A. v. Am. Airlines, Inc.,* 303 F.3d 293, 300 (3d Cir. 2002)

(internal quotations omitted). Phrased differently, "[i]f a defendant does not challenge the facts alleged in the plaintiff's pleadings, a court may rule on the motion by accepting these allegations as true." *McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 290 (3d Cir. 2006) (citing *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 177 (3d Cir. 2000). If however, defendant makes a factual challenge and "contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction." *Id.* The court may then decide "the jurisdictional issue by weighing the evidence" but "[i]f there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *Id.*

There are limited circumstances in which the federal courts lack jurisdiction, even where a complaint on its face properly alleges diversity of the parties and exceeds the threshold amount in controversy. One such circumstance is the probate exception, "a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789." *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 226 (3d Cir. 2008). While the bounds of the probate exception have changed over time, in its current manifestation in the Third Circuit, it deprives the federal courts of subject matter jurisdiction over actions endeavoring to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *Id.* at 227.

Defendants in this case first mount a facial challenge to the Court's jurisdiction, arguing that Plaintiff has failed to plead complete diversity of citizenship. Accordingly, the Court may rule on Defendants' Motions by taking the allegations in the Amended Complaint as true. When considering the sufficiency of the pleadings, "[i]t is well established that 'the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot 'be established

argumentatively or by mere inference.'" *S. Freedman & Co. v. Raab,* 180 Fed. Appx. 316, 320 (3d Cir. 2006) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206, at 78–79 (1969 & Supp. 2005)). Plaintiff, therefore, bears the burden of affirmatively alleging the complete diversity of the adverse parties. Defendants also move, in the alternative, that even if diversity jurisdiction is properly alleged, the probate exception operates to deprive the Court of jurisdiction in this case. The Court will evaluate these two arguments in turn, before considering Defendants' other potential bases for dismissal.

## IV. JURISDICTION: COMPLETE DIVERSITY OF ADVERSE PARTIES

In this case, Plaintiff invokes the jurisdiction of this Court under 28 U.S.C. § 1332(a). To establish diversity jurisdiction under § 1332(a), the amount in controversy must exceed $75,000 and there must be complete diversity of citizenship among the adverse parties. It is undisputed that Plaintiff alleges the requisite amount in controversy.[1] The dispute over diversity jurisdiction in this matter, accordingly, centers exclusively upon the requirement of complete diversity of the adverse parties. For complete diversity to exist, each plaintiff must be a citizen of a different state from each defendant. *Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365 (1978). The

---

[1] The Complaint includes claims for $252,997.99 in compensatory damages and an additional $200,000 in punitive damages. [Amended Complaint, ¶ 61(1)-(2)]. "The allegations on the face of the complaint control the amount in controversy unless it appears 'to a legal certainty the claim is really for less than the jurisdictional amount. . . .'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (quoting *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961). In calculating the amount in controversy, claims for punitive damages may be aggregated with claims for compensatory damages unless the former are "'patently frivolous and without foundation.'" *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1046 (3d Cir. 1993) (quoting *Gray v. Occidental Life Ins. Co.,* 387 F.2d 935, 936 (3d Cir. 1968)). Defendants have not challenged, and this Court finds no infirmity, in Plaintiff's allegations as to the threshold amount in controversy.

Amended Complaint names the parties as follows: Plaintiff Linda M. McDonald is a citizen of the State of New Jersey,[2] Defendant William H. Copperthwaite, Jr., *deceased*, represented by Executrix Nancy Copperthwaite, is a citizen of the State of Pennsylvania, Defendant William H. Copperthwaite III is a citizen of the State of Pennsylvania, Defendant Nancy Copperthwaite Tischenkel is a Citizen of the State of Florida, Defendant RLI Surety is a corporation with its principal place of business in and is a citizen of the State of Pennsylvania, and Defendant RLI Insurance Company is a corporation with its principal place of business in and is a citizen of Illinois. Also relevant to the present inquiry, Helen Copperthwaite, *deceased*, is alleged to have been a citizen of the State of New Jersey.

Defendants offer two distinct arguments that Plaintiff has failed to plead complete diversity of the parties. Neither argument challenges the factual allegations of citizenship in the Amended Complaint — Defendants acknowledge that the individuals are domiciled where indicated and that the corporations have their principal places of business where indicated. Instead, Defendants challenge the legal sufficiency of the citizenship allegations on the theory that the complete diversity of the parties pled in the Amended Complaint is a sham.

A. Whether Nancy Must Be Sued in Her Capacity as Executrix

First, Defendants argue that because all of the allegations of misconduct in the Amended Complaint leveled against Defendant Nancy exclusively concern actions taken by Nancy in her capacity as the Executrix of the Estates of WHC Jr. and Helen, Nancy must be sued in her

---

[2] Plaintiff erroneously uses the terms "resides in" instead of "is domiciled in" or "is a citizen of," but for the purposes of the present Motions, the Court will generously construe the Amended Complaint's references to the residence of individuals as their domiciles. The citizenship of the corporate parties is properly alleged.

capacity as the personal representative/executrix of those estates. 28 U.S.C. § 1332(c)(2) provides that personal representatives of estates are considered to take on the citizenship of the decedent for diversity purposes.[3] Thus, Defendants argue, were Nancy properly named as a defendant in this case in her capacity as the Executrix of Helen's Estate, she would be, as Helen was, a citizen of the State of New Jersey. Because Plaintiff is also a citizen of the State of New Jersey, diversity would not be complete and there would be no subject matter jurisdiction over the claims in the Amended Complaint.

There is, however, a legally significant gap in the Defendants' facile reasoning, which is whether Plaintiff was *legally obligated* to sue Nancy in her capacity as the personal representative of the estate of Helen. Defendants have convincingly argued, first, that all of Nancy's conduct alleged in the Complaint occurred as part of the administration of the estates, and, second, that were Nancy sued as the executrix of Helen's estate in this case, diversity would

---

[3] 28 U.S.C. § 1332(c)(2), provides in relevant part:

> For the purposes of this section . . . the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent.

28 U.S.C. § 1332(c)(2) was added to the diversity statute by the Judicial Improvements Act of 1988, Pub. L. No. 100–702, 102 Stat. 4646. "The intent of the 1988 amendment was to avoid permitting the residency of fiduciaries for decedents to affect diversity jurisdiction. Prior to 1988 the importance of the residence of a decedent's representative for diversity purposes lent itself to manipulation and forum shopping. This, in turn, led to substantial side litigation concerning whether [the] choice of an out-of-state fiduciary was collusively made in order to manufacture diversity, contrary to 28 U.S.C. 1359." *Liu v. Westchester Cnty. Med. Ctr.*, 837 F. Supp. 82, 83 (S.D.N.Y. 1993) (citing *McSparran v. Weist,* 402 F.2d 867 (3d Cir. 1968), *cert. denied* 395 U.S. 903 (1969)). Prior to the 1988 amendment, the Third Circuit had "long held in cases in which an administrator, trustee, or executor has control over the litigation that it is the citizenship of the representative and not the decedent or beneficiaries that is determinative of federal jurisdiction." *Field v. Volkswagenwerk AG*, 626 F.2d 293, 302-03 (3d Cir. 1980). Since the amendment, however, the Third Circuit has clearly recognized the change in the diversity rule. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) ("If a party is deceased, the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent.") (citations omitted); *Golden ex rel. Golden v. Golden*, 382 F.3d 348 (3d Cir. 2004) ("In diversity actions involving estates, the courts look to the citizenship of the decedent to determine jurisdiction.").

not exist. However, while not briefed by any of the parties, a review of the New Jersey statutes governing such causes of action suggests that Plaintiff is not obligated to sue Nancy in her representative capacity as executrix. N.J. Stat. § 3B:14-33, under the Title "Administration of Estates" and in the Article "Liability of Fiduciaries and Protection of Persons Assisting or Dealing with Fiduciaries," states:

> Claims based on . . . torts committed in the course of estate administration *may* be asserted against the estate by proceeding against the fiduciary in his fiduciary capacity, whether or not the fiduciary is individually liable therefor.

(emphasis added). The Court reads N.J. Stat. § 3B:14-33 together with the preceding provision, N.J. Stat. § 3B:14-32:

> A fiduciary is individually liable . . . for torts committed in the course of administration of the estate only if he is personally at fault.

Together, these statutes make clear that while a plaintiff *may* sue an executrix in tort in her capacity as the representative of an estate, a plaintiff is not *required* to do so.

N.J. Stat. § 3B:14-32 explicitly provides for individual liability for fiduciaries of estates, such as an executrix. In this case Plaintiff has raised a claim against Nancy for tortious interference with an expected inheritance, and has alleged that Nancy possessed the specific intent to conceal defalcated funds. On its face, therefore, the Amended Complaint alleges a tort committed in the course of estate administration and fault on the part of the executrix. This appears sufficient for an individual capacity suit under § 3B:14-32. While Defendants have maintained that because all of Nancy's alleged conduct was taken in her capacity as executrix, she must be sued in her capacity as executrix, never once have they provided relevant statutory or precedential support. In the absence of any law modifying or contradicting the clear wording of the New Jersey statutes, this Court is bound to conclude that Plaintiff was not required to sue Nancy as Executrix of the Estate of Helen, and, accordingly, Nancy's citizenship as an individual

— in the State of Florida — applies for diversity purposes, at least in the context of Plaintiff's main tortious interference claim.

B. Whether the Estate of Helen Must be Joined to this Action as an Indispensable Party

Defendants' second argument, that Plaintiff has structured the pleadings to manufacture sham diversity, is that Plaintiff has intentionally not named the Estate of Helen as a party, despite the fact that it is clearly an indispensable party to this action under Fed. R. Civ. P. 19. The Estate of Helen, which would be sued through its personal representative, is a citizen of the State of New Jersey. Accordingly, were it joined to the present action, complete diversity of the adverse parties would be destroyed.

Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory. "[A] holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible (i.e., will defeat diversity) and the party is indispensable to the just resolution of the controversy." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007); *See also Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 405 (3d Cir. 1993). Under Rule 19(a), the joinder of parties is compulsory or "necessary" if their joinder is "feasible." Specifically, the rule states in material part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Courts treat clauses (1) and (2) in the disjunctive just as the rule phrases them. *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.,* 158 F.3d 170, 175 (3d Cir. 1998) ("As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible."). "Under Rule 19(a)(1) we ask whether complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties." *Gen. Refractories*, 500 F.3d at 313. That is we ask "whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *Id.* (citing *Angst v. Royal Maccabees Life Ins. Co.,* 77 F.3d 701, 705 (3d Cir. 1996)). "Notwithstanding a determination that complete relief may be accorded to those persons already named as parties to an action, a court still may deem a party 'necessary' under subsection (a)(2) of Rule 19. Under 19(a)(2) we consider the effect that resolution of the dispute among the parties already joined to the action may have on any absent parties. *See* Fed. R. Civ. P. 19(a)(2)." *Gen. Refractories*, 500 F.3d at 316.

Defendants in this case do not merely argue that the Estate of Helen is a "necessary" party under Rule 19(a), they allege that the Estate of Helen is an "indispensable" party. When a party is deemed "necessary" under Rule 19(a), joinder must occur if feasible. If joinder of a "necessary" party would divest the district court of subject matter jurisdiction (i.e., destroy diversity), a court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction. Under Rule 19(b), the four factors listed for the court's consideration, though not exhaustive, are "the most

important considerations" in determining whether a party is indispensable. *Gardiner v. V.I. Water & Power Auth.,* 145 F.3d 635, 640 (3d Cir. 1998). These factors are:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). *Gen. Refractories*, 500 F.3d at 319.

Defendants argue that the estate of Helen is an indispensable party because 1) any relief granted would impact the administration of Helen's Estate now in the probate court, and 2) because any action for payment on the surety bond to which the Estate also has a claim may only be brought by the Estate or necessarily requires the Estate's participation. I will reserve consideration of Defendants' first argument for later in this opinion as it is inextricably intertwined with the question of whether the probate exception to federal jurisdiction applies in this case. Stated simply, if resolution of the present dispute would require direction to the estate considering specific estate assets, then the question of joinder is moot, because the probate exception would necessarily strip the federal court of jurisdiction over the matter.

Defendants' second contention, however, appears once again to lack statutory support. N.J. Stat. § 3B:15-24 states:

> Except as otherwise provided by law, when the bond of a fiduciary given to a court or to a judicial officer or clerk of a court, for the faithful performance, by him, of the duties of his office as fiduciary, is forfeited, the bond may, without leave of court, be prosecuted in any court of record by, and at the expense of, *an aggrieved party* and in the name of the State at the relation of the aggrieved party. (emphasis added).

Nothing in this statute, which creates the cause of action for "prosecution of fiduciaries' bonds," suggests that the Estate is the sole proper claimant after an alleged forfeiture. Much to the

contrary, the unambiguous text of the statute appears to allow any "aggrieved party" to prosecute the bond in "any court of record."

Even if the Estate is not the only party who may sue to collect on the bond, it might still have been possible, as Defendants suggest, that it must be joined to such an action as a party. As an initial matter, the provision of a procedure for notice to all potential claimants and evaluation of claims *after* an individual claimant has won a judgment against the surety in a court of record, suggests that it is not necessary to join all claimants to the original action in which judgment against the surety is sought. N.J. Stat. §§ 3B:15-26-3B:15-29. More importantly, even before reaching the Rule 19(a) and 19(b) factors, if Defendants are correct that the estate must be joined to this action as a claimant to the surety bond, the alignment of parties would not destroy diversity. The suit on the bond would remain against RLI, and the estate of Helen would be added as a plaintiff with a claim to any disbursement. Accordingly, the New Jersey Estate of Helen would be aligned with, not adverse to the New Jersey Plaintiff. It is important to note that, here, the Court is only considering Defendants' Rule 19 argument that the estate of Helen must be joined to the action as an indispensable party. Defendants' argument that the bond is property of the estate for the purposes of the probate exception is discussed, *infra*. Accordingly, if the Estate of Helen is to be joined to this matter as a defendant because it is an indispensable party, it will be for the reason that Plaintiff's requested relief requires decisions on the disposition of specific estate assets. This question of joinder implicates the same factors to be considered in the Court's application of the probate exception to federal jurisdiction.

V. HISTORY OF THE PROBATE EXCEPTION

While both Plaintiff and Defendants cite the controlling precedents governing the probate exception to federal jurisdiction, they have often done so without regard to the cases' chronological and precedential relation to one another. The history of the probate exception is one of a progressive narrowing and refining of the limitation on federal jurisdiction, so selective quotations from earlier decisions without reference to how those quotations have subsequently been interpreted are of little use to the Court. I therefore provide a brief discussion of the evolution of the probate exception to clarify the current state of the law in this Circuit.

The "jurisdiction conferred by the Judiciary Act of 1789, which is that of the English Court of Chancery in 1789, did not extend to probate matters." *Markham v. Allen*, 326 U.S. 490, 494 (1946). Accordingly, federal courts over time came to recognize an exception to their subject matter jurisdiction where probate matters were involved. The bounds of this "probate exception," were not clear at its inception. The Supreme Court made its first attempt to clarify the nature of the exception in *Markham v. Allen*. There, the Supreme Court held that:

> while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, ... it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

326 U.S. at 494. Circuit Courts of Appeals interpreting the *Markham* decision relied extensively on the Supreme Court's admonition "not [to] undertake to interfere with the state court's possession" of estate property. They interpreted the probate exception to broadly eliminate federal jurisdiction in matters also within the jurisdiction of state probate courts. The Third Circuit took such a broad view in *Golden ex rel. Golden v. Golden*, 382 F.3d 348 (3d Cir. 2004):

> After acknowledging the confusion arising out of the exact scope of the probate exception, [the Third Circuit] stated that if the resolution of an action, including an *in personam* action, would "undercut the past probate of a will or result in the federal court assum[ing] general jurisdiction of the probate or control of the property in the custody of the state court," we would dismiss for lack of jurisdiction. [The court] further held that, consistent with our precedent, "[w]e take a fairly broad view of the types of actions that interfere with the probate proceedings." Applying these principles, [the court] concluded that claims for undue influence, forgery, and breach of fiduciary duty as an executor would interfere with probate proceedings and were therefore subject to the probate exception.

*Three Keys*, 540 F.3d at 226 (citing *Golden*, 382 F.3d at 358-60).

In 2006, the Supreme Court, expressly criticizing *Golden* and other similar opinions from other circuits, dramatically limited the probate exception. In *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court clarified the "interference" language from *Markham* and set the new bounds of the probate exception:

> [W]e comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.* Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.*, at 311-12. Shortly after *Marshall*, the Third Circuit distilled the Supreme Court's holding as follows:

> It is clear after *Marshall* that unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply.

*Three Keys*, 540 F.3d at 227. Thus, this Court will only apply the probate exception in one of the three circumstances enumerated by the Third Circuit in *Three Keys*. All references in briefing to *Markham* and its pre-*Marshall* progeny are unavailing.

VI. JURISDICTION: THE PROBATE EXCEPTION

Defendants make four arguments concerning the probate exception. First, Defendants argue that the probate exception applies because Plaintiff seeks to have a federal court "interfere" with the administration of the estate of Helen, which is now in the *in rem* jurisdiction of the New Jersey probate court. Second, Defendants argue that the probate exception applies because the Complaint seeks payment of the surety bond, an "undistributed or contingent" asset of the estate, which "was issued for the benefit of Helen and must pass through her Probate Estate." Third, Defendants argue that the probate exception applies because Plaintiff seeks to recover a portion of the monies remaining in the Estate of Helen in the amount of $50,000, property currently under the jurisdiction of the New Jersey Surrogate's Court. Fourth, Defendant Estate of WHC Jr. argues separately that the probate exception applies because any claim for damages against the Estate of WHC Jr. actually seeks specific property in the custody of the Pennsylvania Probate Court, because such money damages will be paid from trusts under the administration of the estate, or, alternatively, because Plaintiff has identified the locations of the specific property sought, which are two trusts under the administration of the WHC Jr. Estate.

Defendants' first argument, concerning federal "interference" with the administration of an estate in the jurisdiction of a state court, evidences a lack of understanding of the law governing the probate exception since the Supreme Court's decision in *Marshall*. Defendants ask this Court to find that it has no jurisdiction over matters "interfering" with the probate of Helen's estate, including Plaintiff's claim for tortious interference with an inheritance. There was a time in this Circuit when such an argument would have had merit. *See Golden*, 382 F.3d at 358-60. But the rule of federal "noninterference" in probate matters is no longer good law. "Insofar as

19

*Golden* interpreted the probate exception as a jurisdictional bar to claims 'interfering' with the probate, but not seeking to probate a will, administer an estate, or assume *in rem* jurisdiction over property in the custody of the probate court, that interpretation was overbroad and has been superseded by *Marshall*." *Three Keys*, 540 F.3d at 227. Jurisdiction over this case may not be defeated on the basis of mere "interference."

Defendants' second argument, that the surety bond is an "undistributed or contingent" asset of the estate, also fails. The probate exception has been narrowed to reflect the basic principle that a federal court may not exercise *in rem* jurisdiction over assets already in the *in rem* jurisdiction of a state probate court. *Marshall*, 547 U.S. at 311. The estate of Helen certainly has a claim to any recovery on the surety bond, but that claim is not itself property in the *in rem* jurisdiction of the probate court. Stated differently, this Court cannot be at risk of usurping the probate court's possession of the proceeds of the surety bond, when the probate court itself does not yet possess those proceeds. This conclusion is only reinforced by the alleged facts of the case indicating that Defendant Nancy does not believe that there has been a breach of fiduciary duty by WHC Jr. during his guardianship of Helen and has not made any attempt to recover on the bond for the benefit of Helen's Estate. [Defendant Nancy's Memorandum in Support, IIIA, p. 5]. The Court is not persuaded by Defendants' bald assertions that a cause of action against the surety is "property" of the Estate. Jurisdiction may not be defeated on this basis.

Defendants' third and fourth arguments correctly focus on the nature of the relief requested by Plaintiff. As currently pled, this case presents two distinct categories of relief. One category consists of damages to be levied against *in personam* defendants for the alleged tort of interference with an expected inheritance. The clearest example of this category of damages is Plaintiff's request for punitive damages, which the Plaintiff clearly seeks to recover from

Defendants' personal assets. [Amended Complaint, ¶ 61(2) ("Punitive damages in the amount of $200,000 . . . to deter future similar tortious interference . . . and penalize defendants")]. There is no question that these damages will not be drawn from estate property, and therefore that this Court will not be called upon to exercise its *in rem* jurisdiction over such property.

The other category of relief, however, consists of declarations of entitlement to specific monies, namely $50,000 held by the Estate of Helen, and some remainder of the $326,438.66 "value" of "unjust enrichment" held in trusts administered by the Estate of WHC Jr. [Amended Complaint, ¶¶ 22, 61(1)]. Count II of the Amended Complaint similarly requests the establishment of a "constructive trust" declaring Plaintiff's ownership interest in the latter sum to the exclusion of her sister Nancy. While Count II does not specifically allege that the "value" of "unjust enrichment" demanded refers to the contents of the WHC Jr. trusts identified in paragraph 22, nonetheless, taking the allegations as a whole, there is no other corpus of property over which such a constructive trust could be established. [Amended Complaint, ¶ 38 ("The Plaintiff respectfully requests that this Court impose a constructive trust in favor of Linda McDonald for the full value of the defalcated funds, disallowing Nancy Copperthwaite from being named a co-constructive trustee."); ¶ 22 ("On information and belief, the . . . assets of Helen Copperthwaite defalcated by William H. Copperthwaite, Jr., whilst serving as guardian of the person and property of his incapacitated mother, Helen, was deposited and/or transferred into two trusts established by [WHC Jr.]: namely, the (1) "W.H. Copperthwaite Retirement Plan Beneficiary Trust" . . . and (2) the "Trust for the Benefit of William H. Copperthwaite III.")]. Plaintiff clearly identifies the money sought as that money which was allegedly taken by WHC Jr., and separately alleges that this money was concealed in the trusts administered by the WHC Jr. Estate. *Id.*

A unique feature of this category of relief, distinguishing it from *in personam* damages, is that Plaintiff seeks not only a declaration of its own rights in specific property, but the cancelation of Defendant Nancy's rights to any of the identified assets, by reason of her alleged participation in a conspiracy to tortiously interfere with Plaintiff's inheritance. Plaintiff proposes two mechanisms to bring about this cancelation of rights. First, in Count II, Plaintiff requests imposition of a constructive trust over the defalcated sums — which, again, the Court can only conclude are those sums held in the trusts of the WHC Jr. Estate — for the sole benefit of Plaintiff and explicitly excluding Nancy. [Amended Complaint, ¶ 39]. Then, in the *ad damnum* clause, Plaintiff seeks a declaratory judgment of Plaintiff's rights in $50,000 of Helen's Estate's assets and that Nancy's unclean hands disqualify her from taking part in any defalcated sums recovered. [Amended Complaint, ¶ 61(1) ("the value of estate assets reported by Executrix Nancy Copperthwaite as remaining after payment of creditors, a sum of $50,000.00"); ¶ 61(3) ("An order declaring that Nancy Copperthwaite's unclean hands in assisting the other *in personam* Defendants in the civil conspiracy to shield the defalcated sums in William H. Copperthwaite, Jr.'s two trusts and/or other accounts serve to bar her in equity from taking any of the defalcated/wasted sums recovered in this action.")].

The Third Circuit has dealt with such claims for relief in the past, concluding that where "[e]ach count in [plaintiff's] complaint is based on the supposition that [plaintiff] has an ownership interest in [identified property] . . . we must consider the third prohibition of the probate exception—that a federal court cannot assume *in rem* jurisdiction over estate property in the custody of the probate court. If the relevant [properties] are Estate property in the custody of the [probate] Court, and if [plaintiff's] claims would require a federal court to assume *in rem* jurisdiction over those [properties], then it follows that the probate exception precludes the

exercise of diversity jurisdiction. *Three Keys*, 540 F.3d at 227. Thus while it is clear that the first category of relief, damages against *in personam* defendants, does not require the exercise of *in rem* jurisdiction, this Court must determine whether the second category of relief does so require. Reading the Amended Complaint as a whole, it appears that Plaintiff's requests for declaratory relief require this Court to assume *in rem* jurisdiction over estate property in the custody of the New Jersey and Pennsylvania probate courts.

As an initial matter, because the contents of the trusts of WHC Jr. and the guardianship of Helen were in their possession at the time of their deaths, both sets of assets were initially part of their estates and became property under the exclusive jurisdiction of the probate courts. *See Three Keys*, 540 F.3d at 227-28. The next step in the analysis, determining whether Plaintiff's claims require this Court to assume *in rem* jurisdiction over the WHC Jr. trusts and the $50,000 in the custody of the Estate of Helen, is more difficult. While the Third Circuit has recognized that the distinction between *in rem* and *in personam* is often as elusive as the boundary lines of the probate exception itself, it has found that "at a minimum, following *Marshall,* an action 'to *dispose* of property that is in the custody of a state probate court' involves the assumption of *in rem* jurisdiction over that property." *Three Keys*, 540 F.3d at 229 (citing *Marshall,* 547 U.S. at 312) (emphasis added). For the purposes of the exception, "disposition" includes a declaratory judgment of an exclusive ownership interest in a subject property. *See Three Keys*, 540 F.3d at 229 (count of the complaint requesting "declaratory judgment" in the nature of a declaration of an ownership interest in a body of stocks in an estate currently in probate to the exclusion of other claimants required the exercise of *in rem* jurisdiction over property under the jurisdiction of the probate court). An order from this Court placing the contents of the WHC Jr. trusts into a constructive trust for the exclusive benefit of Plaintiff, or merely declaring that Defendant Nancy

has no right to the identified $50,000 in the Estate of Helen would constitute a "disposition" of estate property now in the custody of the Pennsylvania and New Jersey probate courts. The probate exception is intended to deprive the federal courts of jurisdiction over matters in which the relief requested would require the simultaneous exercise of *in rem* jurisdiction over the same estate property by the federal and state probate courts. My determinations of Plaintiff's entitlements to specific estate property would impermissibly foreclose such determinations over the same *res* by the state courts which already have jurisdiction over that *res* in ongoing proceedings. Accordingly, this Court lacks subject matter jurisdiction over the claims associated with those prayers for relief.

Having found that the probate exception applies, the remaining question before the Court is whether all or only some of Plaintiff's claims must be dismissed. In *Three Keys*, the Circuit Court dismissed all the claims in the Complaint, even those that ostensibly only demanded *in personam* relief in the form of damages. While "[o]n the surface, these claims seek to impose liability against the Defendants as legal persons, which would call for *in personam* jurisdiction[,] . . . [plaintiff] also seeks a determination that its interest in the [estate property] is superior to the interest of the Estate. Each of these claims, whether characterized as an *in personam* action or not, requires the District Court to 'endeavor[ ] to dispose of property that is in the custody of a state probate court,' which is prohibited by the probate exception." *Three Keys*, 540 F.3d at 229-30. Plaintiff chose to draft the Amended Complaint with a single *ad damnum* clause for all six separate counts. That clause, along with Count II's claim for a constructive trust, which the Court has determined to actually be a prayer for relief, seeks precisely the kind of declaratory judgment that the Third Circuit has found to run afoul of the probate exception. As in *Three Keys*, this Court finds that while many of the counts of the Amended Complaint, particularly Count I for

tortious interference with an inheritance, are facially characterized as *in personam* actions, the unified *ad damnum* clause seeking declaratory relief in the nature of determinations of ownership interests in specific property renders each count actually a claim *in rem*. Thus, the probate exception applies to all counts in the Amended Complaint, because they all ostensibly request the same prohibited relief.

In briefing, Plaintiff relied heavily on *Markham* for the proposition that the declaratory relief sought in this case is permissible as merely an "adjudication of rights in property" coupled with an *in personam* award of damages. By seeking a declaration of an *exclusive* right in *specific* property, however, Plaintiff crossed the line into the realm of the probate exception. While this dividing line is indeed a fine one, the Third Circuit has enunciated it eloquently:

> In an effort to clarify prior case law, we note the distinction between an *in personam* action seeking a judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an *in rem* action . . . which seeks a determination of a party's interest in specific property in the custody of the probate court. The distinction mirrors the traditional understanding of a judgment *in personam,* which is of such character that by means of it the plaintiff can, as a means of attaining the principal object of the action, subject the general assets of defendant, as distinguished from some specific property interest, to the payment of his claim.

In sum, the Plaintiff cannot have both of the types of damages she desires and remain in federal court. This Court may award money damages against *in personam* defendants for their tortious conduct, but The Court is prohibited by the probate exception from imposing a constructive trust over estate assets, or extinguishing the ownership interests of rival claimants to specific estate property already in the custody of the New Jersey and Pennsylvania probate courts. *See Rothberg v. Marger*, CIV. 11-5497 RBK/KMW, 2013 WL 1314699 (D.N.J. Mar. 28, 2013) ("It is quite clear that Plaintiff is asking the Court to exercise jurisdiction over specific property that the Amended Complaint quite clearly acknowledges is part of the Estate and thus is within the

control of the Pennsylvania . . . court. This is exactly the type of *in rem* jurisdiction that triggers the third prong of the probate exception and renders federal jurisdiction improper. . . . Thus, the Court declines to exercise jurisdiction over Plaintiffs' claims to the extent they seek a judgment 1) creating constructive trust over . . . Estate assets; and 2) awarding . . . Estate property including . . . two trust accounts.").

## VII. LEAVE TO AMEND

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." The Supreme Court has long instructed the lower courts that "this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While much of the relief requested by Plaintiff in the Amended Complaint would deprive this Court of jurisdiction over Plaintiff's claims, it remains clear that the Supreme Court has recognized the availability of an action for tortious interference with an inheritance outside of the probate exception. In *Marshall* "the Supreme Court held that the single claim at issue, for tortious interference with the plaintiff's expected gift, sought an *in personam* judgment against the defendant, not the probate or annulment of a will, nor any *res* in the custody of the probate court. As such, it was not barred by the probate exception." *Three Keys*, 540 F.3d at 226-27 (discussing *Marshall*, 547 U.S. at 311-12). Therefore, at minimum, Count I of the Amended Complaint can potentially be repleaded in a form over which this Court could exercise subject matter jurisdiction.

In the interest of clarity, the Court will summarize its findings on the Amended Complaint's current jurisdictional deficiencies. First, Count II of the Amended Complaint requesting a constructive trust over the ill-defined $405,995.98 "value of this unjust enrichment" can only reasonably be interpreted to refer in part to the $326,438.66 identified as likely in the possession of the W.H. Copperthwaite Retirement Plan Beneficiary Trust and Trust for the Benefit of William H. Copperthwaite III, which are presently under the *in rem* jurisdiction of the Pennsylvania probate court. [Amended Complaint, ¶ 22]. Count II therefore clearly runs afoul of the Probate Exception and must be removed from any Second Amended Complaint. More importantly, Plaintiff's request for a declaration from this court of entitlement to $50,000 currently in the custody of the New Jersey Probate Court and a declaration of Nancy's unclean hands in paragraphs one and three of the Amended Complaint's unified *ad damnum* clause clearly demand relief which is outside this Court's jurisdiction to give. These claims for relief too must not be made part of any further amended complaint.

## VIII. OTHER BASES FOR DISMISSAL

Defendants' other bases for dismissal, including lack of personal jurisdiction over Nancy under Fed. R. Civ. P. 12(b)(2), and failure to state a claim under Fed. R. Civ. P. 12(b)(6), only apply to elements of the Complaint that may change after the jurisdictional deficiencies are corrected. Concerning Defendants' 12(b)(2) Motion, the primary relief sought against Nancy, outside of tort damages, is in the form of determinations of rights of entitlement to estate assets, particularly disqualification from taking $50,000 in the estate of Helen, and whatever remains of the $326,438.66 in defalcated sums in the estate of WHC Jr. This Court has already ruled that

such relief is unavailable in the federal courts. Plaintiff accordingly may or may not choose to name Nancy as a defendant on certain or all counts. As for the relief in damages, the Court observes without deciding that the Defendants who are alleged to have tortiously interfered with an expected inheritance through manipulation of the estate of an incompetent located in New Jersey likely have subjected themselves to the specific personal jurisdiction of the federal courts in New Jersey by directing a tortious harm into the state.[4] *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 108 (3d Cir. 2004) ("Where a non-resident defendant's contacts with the forum alone are insufficient to establish specific personal jurisdiction, 'we must consider whether the application of *Calder v. Jones,* can change the outcome.' In *Calder v. Jones,* 465 U.S. 783 (1984), the Supreme Court set forth an 'effects test' for determining personal jurisdiction over non-resident defendants who commit intentional torts with effects inside the forum. '[U]nder *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied.'") (quoting *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 260 (3d Cir. 1998)).

Defendants' 12(b)(6) motion was raised fully only in reply briefing and has not been adequately briefed by the parties.[5] Even were the Amended Complaint not now dismissed on

---

[4] The Court also notes without deciding that Plaintiff's claims against Nancy for tortious interference with an inheritance and civil conspiracy seem actually to allege conduct consistent with a breach of fiduciary duty on the part of an executrix toward an estate beneficiary. While the Plaintiff is the master of her Complaint, allegations must at least loosely conform to the cause of action alleged. The Court does not decide whether an action for breach of fiduciary duty would need to be brought in the defendant's capacity as an executrix of an estate, but would require further briefing from the parties should the claim later be brought.

[5] Defendants argue that Plaintiff cannot state a claim for tortious interference with an inheritance in this case because such an action does not exist under New Jersey law unless Plaintiff has pursued adequate available remedies at probate. In support, Plaintiff relies upon *Garruto v. Cannici*, 397 N.J. Super. 231, 240, 936 A.2d 1015, 1021 (App. Div. 2007) ("Addressing an issue

other grounds, the Court would have required further exposition from the parties. Moreover, the 12(b)(6) objection may similarly be affected by the amendment of the Complaint. The primary thrust of Defendants' present motion is that Plaintiff has no cause of action in New Jersey tort law unless there is no comparable remedy at probate. This Court has found many of Plaintiff's requests for damages to be outside of this Court's jurisdiction, and Plaintiff accordingly must recraft her entire plea for relief. The Court cannot rule prospectively on whether the amended pleadings will request damages also available in New Jersey probate court, that may or may not render a tortious interference action unavailable under New Jersey law. The Court therefore denies Defendants' 12(b)(2) and 12(b)(6) Motions with instructions that they should be refiled if not addressed in any Second Amended Complaint. Plaintiff's request for Surreply is therefore denied as moot.


IX. RLI'S MOTION


N.J. Stat. § 3B:15-24 requires that actions to prosecute fiduciary bonds in the State of New Jersey be brought "in the name of the State at the relation of the aggrieved party." The Original Complaint in this case 1) sought, *inter alia*, to recover on the fiduciary bond issued by RLI Surety in the State of New Jersey and 2) was brought only in the name of Plaintiff in her individual capacity. Applying § 3B:15-24, therefore, the Complaint should have named the State of Jersey *ex rel.* Linda M. McDonald as the Plaintiff. Plaintiff acknowledged this error in her

---

that is novel in this State, we now determine that, although an independent cause of action for tortious interference with an expected inheritance may be recognized in other circumstances, it is barred when, as here, plaintiffs have failed to pursue their adequate remedy[7] in probate proceedings of which they received timely notice. We are persuaded that to hold otherwise would play havoc with traditional probate law.") (citations omitted).

pleadings and moved to amend the Complaint to correct it. While maintaining their other objections, Defendants consented to the amendment of the Complaint to name the State of New Jersey *ex rel*. Linda M. McDonald as Plaintiff. The Court approved the filing of this Amended Complaint on December 9, 2013. Because Plaintiff's action to recover on the fiduciary bond is now made in the name of the State of New Jersey at the relation of Plaintiff, Defendant RLI's Motion to Dismiss the Complaint for failure to comply with N.J. Stat. § 3B:15-24 is moot.


CONCLUSION


For the foregoing reasons, this Court finds that 1) Plaintiff has adequately alleged the amount in controversy and complete diversity of the adverse parties required for jurisdiction under 28 U.S.C. § 1332(a); 2) Plaintiff's claims for declaratory relief fall within the probate exception to the federal courts' subject matter jurisdiction, and 3) this Court may have jurisdiction over at least one of Plaintiff's claims if properly repleaded as a pure *in personam* action for damages. Accordingly, Defendants' Motion to Dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) is granted, the Amended Complaint is dismissed without prejudice, and Plaintiff is granted leave to amend consistent with this Opinion within the time set forth in the accompanying Order. Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) is denied, but may be refiled in the event that Defendants' objections remain after the filing of a Second Amended Complaint. Defendant RLI's Motion to Dismiss for failure to comply with N.J. Stat. § 3B:15-24 was mooted by the filing of the Amended Complaint and is denied.


Order to follow.

Dated:  ___5/28/2014_____                              ____/s/ Freda L. Wolfson_____
                                                       The Honorable Freda L. Wolfson
                                                       United States District Judge