**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
LINDA M. McDONALD                       :
                                        :
                    Plaintiff,          :
                                        :     Civil Action No. 13-5559 (FLW)(LHG)
        v.                              :
                                        :     **OPINION**
WILLIAM H. COPPERTHWAITE, III,          :
et al.                                  :
                                        :
                    Defendant(s).       :
_____       :

**<u>WOLFSON</u>, <u>United States District Judge</u>**:

      This case arises out of a single-count Second Amended Complaint filed by Linda McDonald ("Plaintiff" or "Linda") asserting a claim for tortious interference with inheritance against William H. Copperthwaite, III ("WHC III"), Nancy Copperthwaite ("Nancy"); and the Estate of William H. Copperthwaite, Jr., by and through its Executrix, Nancy Copperthwaite ("Estate of WHC Jr.") (collectively "Defendants"). Each Defendant filed a Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6), asserting that New Jersey law does not permit a claim for tortious interference under the circumstances of this case. For the reasons set forth below, the Court finds that the claim of tortious interference is barred here, as Plaintiff has adequate remedies in state probate court. Accordingly, Defendants' Motions to Dismiss are granted, and the Complaint is dismissed.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background underpinning this case is drawn from the Second Amended Complaint, which I assume to be true for the purpose of this motion. This case arises out of a dispute between three siblings, Plaintiff Linda and Defendants Nancy and William H. Copperthwaite Jr. ("WHC Jr.") (deceased), over the estate of their mother, Helen M. Copperthwaite ("Helen"). 2d Am. Compl. at ¶¶ 7–9. On July 11, 2005, WHC Jr. was appointed Guardian of the Person and Property of Helen, who was adjudicated to be incompetent by a New Jersey state court on the same date. *Id.* at ¶ 13. On July 26, 2005, Helen executed a will naming her three children as equal beneficiaries; the will provided that in the event a child predeceased Helen, that child's share would be divided between the remaining children. *Id.* at ¶ 8. WHC Jr. served as Helen's Guardian for six and one-half years. *Id.* at ¶ 14. Plaintiff alleges that, in that time period, WHC Jr. removed assets from Helen's estate, many of which are wholly unaccounted for. *Id.* at ¶ 16. The Second Amended Complaint lists four bank or securities accounts from which monies dwindled without any accounting of where the money went. *Id.* at ¶¶ 16(a)–(d). WHC also allegedly provided no record to show the disposition of the proceeds from the sale of Helen's home. *Id.* at ¶ 16(e). Finally, Plaintiff alleges that $79,557.32 was paid to WHC III, WHC Jr.'s son, for caretaking services provided to Helen over four years; these services, according to Plaintiff, were never provided. *Id.* at *¶* 16(f). Plaintiff asserts that these missing, defalcated, or wasted funds total $405,995.98. *Id.* at ¶ 16.

WHC Jr., a Pennsylvania resident, died on January 10, 2012. *Id.* at ¶ 14. His death left a vacancy in the guardianship of Helen, and no successor was nominated by the court. *Id.* at ¶ 17–18. Nancy was made executrix of WHC Jr.'s estate on January 30, 2012. *Id.* at ¶ 18. Following WHC Jr.'s death, Plaintiff contacted Nancy and requested that she make a final accounting of WHC's guardianship of Helen. *Id.* at ¶ 18. On February 23, 2012 Nancy responded that, having

2

consulted with her probate counsel, she did not believe that her appointment as executrix of WHC Jr.'s account imposed a duty on her to make a final accounting of the guardianship. *Id.* at ¶ 18, Ex. M. Evidently, no final accounting was ever made.

Helen died on July 26, 2012. *Id.* at ¶ 7. Her will was admitted for probate on August 9, 2012, and Nancy was appointed executrix of her estate on the same date. *Id.* at ¶ 10.

Plaintiff asserts WHC Jr. intentionally removed or wasted sums from the Helen's estate totaling at least $405,995.98, while Helen was incapacitated and under his guardianship. *Id.* at 21. Plaintiff further alleges that WHC III accepted $79,557.32 in fraudulent payments. *Id.* at ¶ 23. Plaintiff asserts that the conduct of WHC Jr. and WHC III was tortious as, *inter alia,* conversion, fraud, and breach of fiduciary duty. *Id.* at ¶ 26. Plaintiff further alleges that Nancy has assisted in hiding the money defalcated and fraudulently obtained from Helen's estate. *Id.* at ¶ 29.

Plaintiff filed the original six-Count Complaint in this case on September 18, 2013 against the current Defendants, as well as RLI Insurance Company and RLI Surety. Four Motions to Dismiss were filed in October of 2013. An Amended Complaint was filed December 9, 2013; on May 28, 2014, this Complaint was dismissed without prejudice for lack of subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1). The Second Amended Complaint was filed on June 16, 2014, alleging only tortious interference with inheritance against the estate of WHC Jr., Nancy, and WHC III.[1] All three Defendants filed Motions to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) on July 17, 2014. These Motions were fully briefed on August 26, 2014; however, Plaintiff moved for leave to file a Surreply on September 19, 2014, attaching a

---

[1] RLI Insurance Co. and RLI Surety were not named as Defendants in the Second Amended Complaint.

proposed Surreply to the letter brief. The Motions to Dismiss, and Plaintiff's Motion for Leave to file a Surreply, are presently at issue.

## II. STANDARD OF REVIEW

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly.*").

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief. *Id.* However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 127 U.S. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim . . . . The pleading standard is not akin to a probability requirement, . . . to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)). Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III. DISCUSSION**

All three Defendants have moved to dismiss the Second Amended Complaint, which asserts a single claim of "tortious interference with inheritance.". The Estate of WHC Jr. asserts that, to the extent that a claim for tortious interference with inheritance is cognizable in New

Jersey at all, there is no cause of action for "diminishing the value of a testamentary gift." WHC Jr. Br. at 9. Nancy contends that she had no duty to file a final accounting of WHC Jr.'s tenure as guardian, and therefore Plaintiff's tortious interference claim against Nancy is without basis. Nancy Br. at 4. Nancy further argues Plaintiff has remedies in Probate Court, and therefore is barred from asserting a cause of action for tortious interference with inheritance. *Id.* at 7.[2] I shall first discuss the contours of current New Jersey law on tortious interference with inheritance, and then examine the claims of the individual parties.

### A. Tortious Interference with Inheritance

No New Jersey court has clearly recognized a cause of action for tortious interference with inheritance. Indeed, only a very few cases in the New Jersey state court system even mention the claim, and the New Jersey Supreme Court has never addressed the issue. However, the possibility of such a cause of action was first raised in an Appellate Division case in 1964. In *Casternovia v. Casternovia*, two brothers brought suit claiming that a third brother and his wife "unduly influenced their mother to transfer to them [the brother and wife]" two pieces of property, which allegedly contradicted "a previous indication by [their parents] . . . that their estates would ultimately be divided equally among the three children." 197 A.2d 406, 407 (N.J. App. Div. 1964). The Appellate Division panel noted the possibility of a cause of action for "a tort action for malicious interference with an expected gift." *Id.* at 409. However, it further stated that the basis for such a cause of action would be a "'strong probability' that the anticipated gift or legacy would have been received but for wrongful interference, which necessarily subsumes the death or mental incompetency of the donor at the time the action is instituted." *Id.* Thus,

---

[2] WHC III's Motion to Dismiss "adopts and incorporates the Memoranda" of the other Defendants.

without explicitly recognizing the cause of action, the Appellate Division held that "if the donor is alive and competent, no such action as asserted here will lie." *Id.* Because the mother was alive at the time the case was brought, the Appellate Division affirmed the trial court's grant of summary judgment. *Id.* at 410.

Only one other published case in New Jersey addresses the claim of tortious interference with inheritance. In *Garruto v. Cannici*, two brothers sued the decedent's niece, alleging fraud in the inducement, and claiming that, as a result of the fraud, they were denied shares in their sister's estate. 936 A.2d 1015, 1016 (N.J. App. Div. 2007). The brothers did not timely challenge the will in probate. *Id.* at 1019. The panel noted in a footnote that "[i]t has been suggested that utilization of the tort remedy may be appropriate when a will contest will not accomplish the purposes of the challenger, such as when . . . depletion has occurred through *inter vivos* transfers." *Id.* at 1021 n.6. However, the Appellate Division held that "although an independent cause of action for tortious interference with an expected inheritance may be recognized in other circumstances, it is barred when, as here, plaintiffs have failed to pursue their adequate remedy in probate proceedings of which they received timely notice." *Id.* at 1021. The panel further stated that the Chancery Division, Probate Part has authority over "all controversies respecting wills, trusts and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under [Title 3B]" and that the probate law "specifically designates the manner in which challenges to a will shall be instituted." *Id.* (internal quotation marks and citation omitted). Thus, "challenges to a will based, as in this case, upon undue influence through fraud can proceed under established precedent setting forth the relevant factors for consideration, as well as the quantum and burdens of proof that pertain specifically to this subject area." *Id.*

A third, unpublished, New Jersey decision denied summary judgment on a claim of tortious interference with inheritance. *In re Estate of Mechanic* noted that no New Jersey case had recognized the cause of action, but for the purpose of a motion for summary judgment analogized the claim to tortious interference with prospective economic advantage. Civ. No. BER-P-208-03, 2005 WL 975763 at *4 (N.J. Ch. Div. March 24, 2005). No other New Jersey case has directly examined the cause of action.

### B. Remedies in Probate

The New Jersey Appellate Division has held that "a claim for tortious interference with an anticipated inheritance is unavailable when an adequate probate remedy exists." *Garruto*, 936 A.2d at 1022. Thus, Nancy asserts that there are a multiplicity of remedies available in probate court which negate the claims against her. Nancy Br. at 7. Plaintiff argues, however, that the remedies she seeks, namely *in personam* damages recoverable to herself, punitive damages, and a trial by jury, are not available in probate court. Pl. Br. at 4. Thus, Plaintiff argues, there is no "adequate remedy" in probate court, and her action may go forward.

I find Plaintiff has adequate remedies in probate court. Plaintiff's Second Amended Complaint asserts, in essence, that Helen's estate was diminished because WHC Jr. failed to uphold his guardianship duties, and that, as a result, Plaintiff suffered a loss of her expected inheritance. The underlying injury, however, is to the estate, which may recover through the probate courts. The Probate Code gives the Superior Court "full authority to hear and determine all controversies respecting wills, trusts and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under this title." N.J. Stat. § 3B:2-2. This authority includes controversies over the accounts of guardians, and the process of accounting should a fiduciary die. *See* N.J. Stat. §

3B:17-3; N.J. Stat. § 3B:17-5. It is clear that no final accounting of WHC Jr's guardianship ever occurred; the proper court to order such an accounting is the probate court.[3] Should it become apparent that WHC Jr. did not faithfully perform his duties as guardian, he was required by N.J. Stat. § 3B:15-1 to furnish a bond to secure faithful performance of his duties, and the Probate Code permits prosecution of fiduciary bonds in probate court. N.J. Stat. § 3B:15-24. If the Executrix of Helen's estate, Nancy, will not request a final accounting of WHC Jr.'s guardianship, perhaps due to her potentially conflicting role as Executrix of WHC Jr.'s estate, Plaintiff's remedy is to remove her as Executrix of Helen's estate for failing in her fiduciary duties, or to seek a temporary administrator for this purpose. N.J.S.A. 3B:14-18 (providing for the discharge of a fiduciary upon "sufficient cause"); N.J.S.A. 3B:10-15 (providing for appointment of substituted executor). Again, however, this remedy is available and best provided by the probate court.

Plaintiff further contends that the remedies in probate are inadequate because the funds would be restored to the estate, rather than to her, and because punitive damages and a trial by jury are unavailable[4]. I disagree. First, in *Garruto*, the New Jersey Appellate Division expressly disclaimed the contention that the unavailability of punitive damages rendered a probate remedy inadequate, instead "choosing to compare the relief available in the probate court with what the plaintiff reasonably expected prior to the alleged interference." 936 A.2d at 1021 n.7. The same

---

[3] As noted *infra*, this Court makes no determinations as to whether Nancy, in her role as Executrix for WHC Jr.'s estate, was required to perform a final accounting of WHC Jr.'s guardianship.

[4] Plaintiff's argument relies heavily on an out-of-state case, *Peralta v. Peralta*, which stated that "in a situation where the estate has been depleted to that there could be no remedy in probate, proceeding in a civil action is appropriate." 131 P.3d 81, 83 (N.M. 2005). The situation described in *Peralta* is not applicable here, where Plaintiff can find a remedy in probate.

analysis applies to the availability of a trial by jury—the possibility of a jury trial does not alter the relief available to Plaintiff. Finally, Plaintiff's argument that the money would be returned to the estate, and she would not be made whole, is unavailing. Plaintiff requests damages to compensate for the loss of her portion of the expected inheritance. Should the estate recover the missing funds, Plaintiff, as an heir, will be fully restored to the position that she was in prior to the alleged interference. The remedies available to Plaintiff in probate court are therefore adequate, and Plaintiff's claim for tortious interference with inheritance is barred against all Defendants.

Because Plaintiff's claim is barred for having adequate remedies in probate court, I need not address the Defendants' other assertions, namely that New Jersey law does not recognize a claim for tortious interference based on the value of the inheritance[5], WHC Jr. Br. at 17, or that Nancy had no duty to make a final accounting of WHC Jr.'s guardianship, Nancy Br. at 4. Similarly, to the extent Plaintiff's proposed Surreply focuses on the factual allegations made in

---

[5] In her opposition, Plaintiff argues that "it is well-settled nationally that one of the injuries that may be addressed by an action for tortious interference with inheritance is where the injured beneficiary seeks redress for wrongful *inter vivos* depletion of a decedent's estate." Pl. Br. at 9. To support this statement, Plaintiff cites two cases, *Peralta*, 131 P.3d 81, and *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995). Plaintiff further cites a Stanford Law Review article, C.P. Goldberg and Robert H. Sitcoff, *Torts and Estates: Remedying Wrongful Interference with Inheritance*, 65 Stan. L. Rev. 335 (2013), which describes the two cases cited by Plaintiff as examples, but in fact argues that courts should not recognize claims for tortious interference with inheritance. It is far from clear that it is "well-settled nationally" that *inter vivos* transfers may be the basis for a claim of tortious interference with inheritance. *See, e.g.*, *Estate of Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 477 (Pa. Super. 2004) (holding that Pennsylvania "law does not provide grounds for recovery on the basis of *inter vivos* transfers alleged to diminish an eventual bequest"). Ultimately, however, the cases cited by Plaintiff are inapplicable here because she has adequate probate remedies.

the Second Amended Complaint, *see* Proposed Surreply at 2, Motion for Leave to File a Surreply

is moot.[6]


## IV. CONCLUSION

For the reasons stated above, Plaintiff's Complaint asserting tortious interference with

inheritance is dismissed against all Defendants. An appropriate Order shall follow.


Date:   Feb. 9, 2015                                   _/s/ Freda L. Wolfson_____
                                                       Hon. Freda L. Wolfson, U.S.D.J.

---

[6] In addition to examining the factual allegations of the Complaint, the proposed Surreply
responds to Nancy's allegations in her reply brief that Plaintiff relied on inapplicable foreign
law, and argues that the Defendants have failed to cite authority showing that Plaintiff has
adequate remedies in probate court. These issues were addressed in Defendants' reply briefs
following Plaintiff's assertions that the law of other states should be used here, *see* Pl. Br. at 8–9
(citing cases from New Mexico and Maine) and that she lacked adequate remedies in probate
court, Pl. Br. at 6–7. Because Defendants' arguments were properly in reply to Plaintiff's
opposition brief, no Surreply is required.